## EDMUND O'KEEFE vs. THE CORPORATION OF ST. FRANCIS'S CHURCH.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The plaintiff contracted with the defendant to build a church for a stipulated price and according to certain specifications; the contract containing the following provisions:—"The architect may require any alterations in the work, and in every such case the price shall be increased or diminished upon a reasonable valuation of the work added or omitted; but the contractor shall make no claim for extra work unless done in pursuance of a written order from the architect, and all such claims shall be made to the architect in writing before the next ensuing payment or shall be considered abandoned by the contractor." In a suit by the contractor for services in the construction of the building, in which he claimed that the contract was abandoned and that he was entitled to recover for his whole work independently of it, it was held—

1. That the fact that extra work was called for by the defendant was not admissible as evidence of an abandonment of the contract, so long as it was extra work for which the contract itself provided, and that it was necessary for the plaintiff to show that the deviations from the specifications of the contract were not of that character.

2. That the jury should not find an abandonment of the contract from the fact of deviations from it, unless the evidence was of the most satisfactory character that both parties intended to set it aside. Equivocal conduct, or conduct of doubtful import, would not be sufficient.

Rescission of a contract is one thing; waiving some of its conditions is quite another. Rescission requires concurrent action of both parties. A waiver is the act of a party for whose benefit the condition exists. The

fact that the other party failed to comply with the condition is no evidence that the party to be benefited by it intended to waive it.

Where it was claimed by the plaintiff that the defendant had promised to pay for certain extra work, it was held that this promise was admissible as tending to prove a waiver by the defendant of the provision of the contract that all claims for extra work should be made in writing within a limited time, but that its effect as a waiver must be limited to that one instance.

By the contract the plaintiff was to forfeit $25 a day for every day that the completion of the contract was delayed after a certain day named. The contract contained the following provision:—"No alterations which may be required in the work shall release the contractor from the obligation to finish the work within the time aforesaid, or from the damages to be paid in default thereof, unless claim is made in writing at the time and the architect shall certify that an allowance of additional time ought to be made." The court charged the jury that this provision, if not complied with, would bar the plaintiff from any claim for extension of time by reason of extra work, unless they should find that it was waived by the defendant. Held to be correct.

The plaintiff offered evidence of a declaration by the defendant's agent that the forfeiture for the non-completion of the work within the time limited would not be exacted in respect to delay caused by certain extra work that was required. Held admissible as going to prove a waiver in respect to that particular matter, but not as tending to prove a waiver in respect to other matters.

The plaintiff offered evidence to prove that the use of tools in doing the work was worth a certain sum. Held to be inadmissible except upon the theory that the contract was abandoned, and then only as a circumstance to be considered in ascertaining the value of the plaintiff's services.

The court permitted an experienced builder, offered as a witness by the plaintiff, to state what in his opinion it was worth to build the church. It appeared that he had examined the exterior of the church but had been refused admission to the interior. Held that the witness was competent to give his opinion founded upon such observation as he had been able to make.

The contract contained a provision that in case of the refusal or neglect of the contractor to do any of the work required, the defendant, upon a certification by the architect of such refusal or neglect, might procure the work done and charge the expense to the plaintiff. A mason had contracted with the plaintiff to do the brick work for a certain sum. That sum was exhausted before the work was completed and the mason stopped work. The architect gave notice to the plaintiff to proceed with the brick work, and an agent of the defendant, upon the suggestion of the architect, employed the mason to resume work, which he did and finished it, and the defendant paid him for the additional work thus done. The plaintiff had also notified the mason to go on with the work and supposed that he was doing it on his account and under his contract with him, and no notice was given the plaintiff by

the defendant that the work was to be charged to him. Held that the defendant was bound by the provisions of the contract, and without a certification by the architect of the neglect of the plaintiff in the matter, could not charge him with the extra sum paid to the mason.

[Argued October 7th—decided December 15th, 1890.]

ACTION to recover for work done and materials furnished in the construction of a church for the defendant corporation; brought to the Superior Court in Hartford County, and tried to the jury, before *Prentice, J.* Verdict for the plaintiff, and appeal by the defendant for error in the rulings and charge of the court. The case is fully stated in the opinion.

*A. P. Hyde* and *J. O'Neill,* for the appellant cited—To the point that alterations do not amount to an abandonment of a contract unless they so far depart from it that it cannot be followed, Lloyd on Law of Building, § 53; 2 Chitty on Cont., 2d Am. ed., 823. To the point that where a contract provides that extras shall not be charged for without a written order, nothing but a written order will support the claim, Lloyd on Law of Building, § 48; *Trustees &c.* v. *Platt,* 5 Bradw., 567; *Duncan* v. *Board of Comrs.,* 19 Ind., 154; *Baltimore Cemetery Co.* v. *Coburn,* 7 Maryl., 202; *Abbott* v. *Gatch,* 13 id., 314; *Vanderwerker* v. *Verm. Central R. R. Co.,* 27 Verm., 130; *Carpenter* v. *McClure,* 37 id., 130; *Mills* v. *Weeks,* 21 Ill., 561; *Stuart* v. *Cambridge,* 125 Mass., 102; *Cannon* v. *Wildman,* 28 Conn., 472; *Blakeslee* v. *Holt,* 42 id., 226; *Maloney* v. *Rust,* id., 236; *Brabazon* v. *Seymour,* id. 551; *Starkweather* v. *Goodman,* 48 id., 101; *Pinches* v. *Swedish Lutheran Church,* 55 id., 183; *Kirk* v. *Bromley Union,* 2 Phill., 640; *Lamprell* v. *Billericay Union,* 3 Exch., 283; *Russell* v. *Bandeira,* 13 Com. Bench, N. S., 149; *Tharsiss* v. *Sulphur & Copper Co.,* L. R., 3 App. Cas., 1040; *Richards* v. *May,* L. R., 10 Q. B. Div., 400. That a builder might recover for extra work if ordered and wholly independent of the contract, *Chambers* v. *King,* 8 Misso., 517; *Boody* v. *Rutland & Burlington R. R. Co.,* 24 Verm., 660. That the evidence of Darling the expert was not admissible

without an examination of the work in the interior of the church, *Lydleman* v. *Beckwith*, 43 Conn., 9; *Taylor* v. *Monroe*, id., 36. And to the point that the money paid the mason for work which the plaintiff should have done was chargeable to the latter, *Bailey* v. *Bussing*, 28 Conn., 455, 460.

*J. L. Hunter* and *E. B. Sumner*, for the appellee, cited— To the point that the plaintiff was not to be held to the terms of the contract where such extra work had been ordered, the order constituting a departure from and practical abandonment of them, *Pinches* v. *Swedish Lutheran Church*, 55 Conn., 183; *West Haven Water Co.* v. *Redfield*, 58 id., 39; *Hayward* v. *Leonard*, 7 Pick., 181; *Smith* v. *First Congregational Meeting House*, 8 id., 178; *Munroe* v. *Perkins*, 9 id., 298; *Bartlett* v. *Stanchfield*, 148 Mass., 394; *Linningdale* v. *Livingston*, 10 Johns., 36; *Jewell* v. *Schroeppel*, 4 Cow., 564; *Dearborn* v. *Cross*, 7 id., 48; *Hollingshead* v. *Mactier*, 13 Wend., 276; *Vicary* v. *Moore*, 2 Watts, 451; Parsons on Cont., 7th ed., 523; 2 Phill. on Ev., 83; Field on Damages, § 343. To the point that the forfeiture for non-completion within the time fixed had been waived, 1 Swift Dig., 288; *Palmer* v. *Stockwell*, 9 Gray, 237; *Baasen* v. *Baehr*, 7 Wis., 516; *Daunet* v. *Fuller*, 120 N. York, 554. And to the point that the question of abandonment was one for the jury, *Fox* v. *Harding*, 7 Cush., 516; *West* v. *Platt*, 120 Mass., 421.

CARPENTER, J. This is an action to recover for materials furnished and labor performed in the construction of a church edifice. The complaint contains only the common counts.

The first defense is a denial of the allegations in the complaint. The second sets up a written contract under which the labor and materials were furnished. The third alleges a disagreement of the parties as to extra compensation, a submission of that matter to the arbitrament of the architect, and an award by him that the plaintiff was not entitled to compensation for extras, etc. The fourth defense is that

under the contract the plaintiff is liable to a forfeiture of twenty-five dollars per day for three hundred and fifteen days, in consequence of a failure to complete the contract within the time stipulated. The fifth is that the defendant paid to the plaintiff over forty-six thousand dollars. The sixth sets up the payment of over three thousand dollars to one Patrick Maher, a sub-contractor, for labor performed by him. The seventh alleges that the plaintiff neglected certain work, etc., and that by direction of the architect the defendant caused said work to be done at an expense of over two thousand dollars.

The plaintiff replied to the answer in substance as follows:—To the second, fourth and seventh defenses, that the contract therein referred to had been abandoned; the third defense was denied; the fifth was denied except as admitted by the credits given; and all the paragraphs of the sixth defense were denied. The defendant denied all the allegations in the plaintiff's replication.

The case was tried to the jury, and a verdict rendered for the plaintiff. The defendant has appealed.

The first reason of appeal is " that the court erred in admitting parol evidence to prove that the excavations for the foundation walls were made deeper than shown on the plans, and that changes were made in the foundation, for the purpose of showing that the written contract had been rescinded or abandoned."

For the purpose of proving that the contract was abandoned by the parties, the plaintiff relied upon the acts and conduct of the parties subsequent to the execution of the contract and during the progress of the work, and upon the circumstances under which the work was done; and during the trial he offered a variety of evidence touching such acts, conduct and circumstances. Included in the evidence so offered was evidence that various changes were made in the plan and construction of the building from that contemplated by the contract, and of how those changes were ordered. Such evidence was objected to by the defendant and admitted by the court.

The evidence so objected to and received was—1st. That the foundation walls were carried to a much greater depth than intended in the original plan or called for in the specifications and contract; that they were so carried under directions from the authorized agent of the defendant, and under a promise by him to pay therefor.—2d. That granite instead of brick was used for building the basement walls.—3d. That granite instead of brown stone trimmings was used throughout the building.—4th. That North Haven brick instead of Springfield brick was used in the construction of the walls.—5th. That slate instead of galvanized iron was used upon portions of the roof.

The objection to this evidence was that the contract provided for changes and extras, and therefore that it did not tend to prove an abandonment of the contract. As to the foundation walls there was a further objection, namely, that the contract itself required that the foundations should be dug down until a proper and suitable bed should be reached; so that what was done in that respect was strictly in performance of the contract, notwithstanding the direction of the agent and an express promise by him to pay. Among the requirements of the contract relative to alterations and extra work are the following :—" The architect may require any alterations in the work shown or described in the drawings or specifications, and in every such case the price hereby agreed to be paid for the said work shall be increased or diminished as the case may require, according to a fair and reasonable valuation of the work added or omitted."—" The contractor shall make no claim for extra work unless the same shall be done in pursuance of a written order from the architect, and all such claims shall be made to the architect in writing, before the next ensuing payment, or shall be considered abandoned by the contractor."

Clearly the performance of a contract according to its terms is no evidence that the contract was abandoned; on the contrary it is cogent evidence that it was not abandoned. If therefore the defendant could have shown such a performance it would have put an end to this contention of the

plaintiff; and this is true of deviations from the contract, if such deviations are provided for and made in the manner prescribed. It was therefore incumbent on the plaintiff, in order to make such evidence available, to show not only that the contract was departed from, but also that the contract was not followed in making such departure. Strictly speaking, the first step in the proof was to show the deviation, and the next to show that it was not under the contract. The first was admissible as a preliminary step, or as laying the foundation for the second. If, under the second branch there was any evidence for the jury to consider, the plaintiff was entitled to the first, and the evidence was properly received.

There were several particulars in which it was claimed that the contract had been departed from. The number of such variations was a circumstance which the jury might properly consider. If changes were made in the plan of specifications with respect to the material used, or the style and quality of the work, without taking the steps pointed out in the contract, as there were in some instances, the manner of making such changes was some evidence that the parties did not regard the contract as still in force. Numerous instances are referred to in the supplemental finding. It is there found that evidence was offered by the plaintiff to show that all the various alterations in the building were made without any requirement therefor from the architect as provided in paragraph five of the contract, but by the parties, and at the request of the defendant; that the parties never recognized the written order of the architect as a basis of a claim for extra work as specified in paragraph fourteen of the contract, but wholly ignored this requirement from first to last; that the parties wholly disregarded the provision of paragraph fourteen that no claim for extra work would be recognized unless made to the architect in writing before the next ensuing payment; that the parties ignored the provision in the contract as to date and penalty for completion, as provided in paragraph eleven of the contract, and the provisions of paragraph twelve as to the mode of obtaining

allowance of additional time, and acted upon mutual agreement; that the defendant, without the knowledge of the plaintiff, employed Patrick Maher to work laying up the brick walls, the laying of which walls was included in the contract, without terminating the employment of the plaintiff, as provided in paragraph thirteen of the contract, and in disregard of the provisions of that paragraph in regard to employing other persons and as to the expense incurred thereby; that payments on account of the work were not made in the amounts or at the times provided in the contract; and that the payments were invariably made as the parties verbally agreed, and never upon the certificate of the architect as provided in paragraph sixteen.

Upon this statement of the case it is impossible for us to say that the evidence objected to was improperly permitted to go to the jury; especially as the court was careful to explain to them the nature, force and effect of the contract, and to caution them not to find an annulment or abandonment unless the evidence satisfied them that both parties intended to set aside the contract and disregard its provisions.

The second reason of appeal raises the question whether parol evidence was admissible of a promise by the defendant to pay extra compensation for excavating for the foundation walls deeper than the plans called for. In the defendant's brief it is said that the evidence we have already considered was admitted by the court against the defendant's protest, as evidence that the parties had waived the written provisions of the contract as to extras. We do not find in the record that the evidence was offered or received for the purpose of proving a waiver. Technically, therefore, there is some difficulty in considering the question as a question of evidence. But the same question is raised in another form. The defendant's sixth request is as follows :—" The agreement provides that the contractor shall make no claim for extra work unless the same shall be done in pursuance of a written order from the architect; and that all such claims shall be made to the architect in writing before the next ensuing payment, or shall be considered abandoned by the con-

tractor. Now this clause protects the defendant against all claims for extra compensation that are not wholly independent of the contract, unless the certificate of the architect in writing is produced and his claim for extra compensation was made in writing as required by the contract; and so far as this part of the case is concerned, the case is not altered although the additional work was ordered by the general agent of the defendant corporation."

The court did not so charge, but charged as follows :—" If, however, the plaintiff excavated to a greater depth than I have indicated was his duty to do upon the promise of Father Fagan to pay him, then such promise would be upon good consideration as to such additional work, and the plaintiff would be entitled thereby to a reasonable allowance therefor as an extra. But the amount for which such allowance should be made should be confined to the work done in excess of what was necessary to obtain the required foundation or bed. The result would be the same if excavations not required in the contract were ordered merely, for the law ordinarily implies a promise to pay a reasonable price where work one is not bound to do is directed and done. These last two items as to the plaintiff's right to recover for unrequired excavation, demand such qualification as arises by virtue of paragraph fourteen, which reads as follows :—' The contractor shall make no claim for extra work unless the same shall be done in pursuance of a written order from the architect, and all such claims shall be made to the architect in writing before the next ensuing payment, or shall be considered abandoned by the contractor.' This paragraph makes two conditions precedent to the right to recover for extras ; one, a written order of the architect, and the other, the filing of a claim with the architect before the next ensuing payment. Unless waived this provision remains a valid portion of the contract, absolutely binding upon the parties, however harsh it may appear to be. Such provisions are not inserted in contracts for naught, and are not to be disregarded. The parties, however, might, by express agreements, or by acts or conduct from which agreements could be reasonably in-

ferred, waive it, or either condition of it, either entirely, as to the whole work, or as to any portion of the work. Such waiver you would be justified in finding from such repeated or continued disregard of its provisions as to indicate that the parties had no intention to rely upon them and had been led to act accordingly. If you should find such waiver from the evidence, whether the same be entire or partial, you will of course give no effect to the conditions expressed therein to the extent of the waiver. In the absence of waiver, however, you will give them effect."

The ninth reason of appeal is " that the court erred in neglecting to charge as requested by the defendant in each one of the ten written requests;" and the eleventh is "that the court erred in its charge on the subject of a waiver of the stipulations in the written contract." Thus the question discussed is fairly presented in the objections to the charge.

We are inclined to think that the defendant was entitled to the charge substantially as requested. The contract was careful to provide in explicit terms the course to be pursued if extra work was to be paid for, and that if that course was not taken the work was to be regarded as included in the contract, and the contractor not entitled to extra pay. Yet, notwithstanding this, the plaintiff claimed on the trial that he had done a large amount of extra work for which he was entitled to pay, while conceding that the provisions of the contract had not been complied with. The only ground on which this claim can be sustained is that there had been a waiver of the conditions of the contract; for, it will be remembered, the requests and the charge proceed upon the theory that the contract had not been abandoned. The contract provided for changes, and that there should be no extra pay therefor except under certain conditions. The refusal to charge as requested, and the charge as given, gave the jury to understand that they were at liberty to infer a waiver from the fact that changes were thus made. It proved just as strongly that the parties contemplated that the work should be done without extra compensation.

We suppose the law to be that the contract must control

unless its provisions have been clearly waived.  Some of
the authorities maintain that there must be an express
waiver ; and all agree, or should agree, that nothing short
of evidence of the most satisfactory character should be per-
mitted to brush aside a contract which the parties have de-
liberately made.   They have determined that certain things
shall be proved only by written evidence.   To that extent
that is the law of this case.   It is the duty of the court to
enforce that law unless it clearly appears that the parties
themselves have abrogated it.   Has it been thus abrogated ?
The conditions of the contract we are now considering were
inserted for the benefit of the owner.   There is certainly no
presumption that he has waived them.   He, and he alone,
can waive them.   No act or omission by the plaintiff will be
of any avail.   If the owner has intentionally relinquished a
known right, the plaintiff should be able to show it, either
in express terms or by acts and conduct equivalent thereto.
Equivocal conduct, or conduct of doubtful import, is not
sufficient.

On the question of abandonment we sustained the court
in admitting evidence that the terms of the contract were
repeatedly disregarded.   But there is a distinction between
that question and the one we are now considering.   Rescis-
sion of a contract is one thing; waiving some of its terms is
quite another.   Rescission required concurrent action by
both parties—a meeting of minds.   A waiver is the act of
the party for whose benefit the condition exists.   The fact
that the other party failed to comply with the condition is
no evidence that the party to be benefited by it intended to
waive it.

It devolved upon the plaintiff in each instance to procure
a written order from the architect and to make his claim in
writing.   His failure to do so in one instance does not tend
to prove a waiver by the defendant.   Repeated failures add
nothing.   Ciphers added to ciphers indefinitely, the result
is the same—nothing.

But it is said in the matter of the foundation walls the
defendant promised to pay extra.   The defendant denied

that such a promise was made. If the plaintiff had complied with the conditions of the contract, the contract itself would have contained a promise, and there would have been no occasion for a verbal promise. The latter is not a substitute for the former. Being disputed, a controversy exists such as the contract was intended to avoid. Conceding that the evidence of the plaintiff that there was a promise tended to prove a waiver, its effect must be limited to that one instance.

It also appears that the parties agreed verbally upon $300 extra for the substitution of granite for brick walls in the basement. Respecting that there is no dispute. That proves a waiver in that instance; but it does not tend to prove a waiver in all instances. As injustice may have been done we think the defendant is entitled on this ground to a new trial.

The third reason of appeal is as follows:—" The court erred in permitting the plaintiff to prove that the use of tools, etc., was worth $4,622. There is no allegation in the complaint that the defendant promised to pay ten per cent. profit upon the cost of the work."

Upon the theory that the contract remained in force, and that the work was done under it, this evidence was irrelevant and not admissible. Upon the theory that the contract was abandoned, we do not see why it was not admissible as an element in determining what the work was reasonably worth; not as a rule of damages, nor as necessarily showing that that item was to be recovered, but simply as a circumstance to be considered in ascertaining the value of the plaintiff's services. For that purpose we do not think the allegation of a special promise in the complaint necessary.

The case does not inform us whether the jury assessed damages upon the one theory or the other; and we do not find in the record that the court limited the evidence as indicated above.

The fifth reason of appeal is " that the court erred in permitting Mr. Darling to say what it was worth to build the church."

Mr. Darling was a practical builder of experience and had examined the church in question, although refused admission to the interior. We cannot say that it was error to receive this evidence. The witness was competent to speak so far as his observation extended, and his evidence may have been of some value.

The sixth reason of appeal is "that the court erred in admitting parol evidence to show that the $25 forfeiture would not be exacted."

The record shows that "the plaintiff was interrogated in chief with regard to a conversation had by him with Father Fagan at the time the foundation was being dug, as to the contract provision concerning the date of completion and the penalty for non-performance. Counsel claimed to show by the witness that he spoke to Father Fagan about the delay which would be involved in the increased foundation work, and asked him if he, under the circumstances, intended to hold the witness to completion by the day fixed; and that Father Fagan then informed him that the $25 forfeiture would not be exacted, or words to that effect." The defendant's counsel objected. The plaintiff's counsel claimed the evidence "as tending to show a waiver of that stipulation in the contract, if it should be found to have remained in force." The court admitted the evidence.

We think the evidence was properly received for the purpose claimed, but for reasons already given, we think it was not admissible for the purpose of proving a waiver in respect to other matters.

The defendant in its eighth reason of appeal complains that the court refused to charge as requested, and of the charge as given. The request is as follows:—" By the terms of the contract Mr. O'Keefe, the plaintiff, was bound to complete the same before the first day of February, 1883. It was further agreed that the neglect, delay or fault of any other contractor, or that any alterations that might be required, should not release Mr. O'Keefe from the obligation to finish his work before the first day of February, or from the damages to be paid for his default, unless he made his

claim in writing at the time of such neglect, default or delay, and the architect certified that an allowance of additional time ought to be made. Now I charge you that unless Mr. O'Keefe finished the work to be done by him under the contract before the first day of February, 1883, he is liable to the defendant at the rate of $25 per day for every day thereafter that the work remained unfinished, unless Mr. O'Keefe claimed in writing that the alleged neglect, default or delay hindered him in the completion of his work under the contract; and unless, further, the architect certified that an allowance of additional time ought to be made; and it would be your duty to set off and deduct and recoup against any claim which the plaintiff may have, growing out of the construction of the church, $25 per day for every day the completion of this contract was delayed after the first day of February, 1883, not including Sundays however."

The court charged as follows :—" The law is so, gentlemen, that time limits become reasonably enlarged by alterations or enlargements, upon the owner's request or suggestion that work be done which delays the performance of the work, the extension being measured by the delay thus caused. But there is another provision in the contract which enters into this matter and determines the rights of the parties to extension, being paragraph twelve of the contract, to wit, ' The owner shall not be liable to the contractor for any neglect, default or delay of any other contractor upon the building; nor shall any such neglect, delay or default of any other contractor, or any alterations which may be required in the work, or any damage which may happen thereto by fire or otherwise, release the contractor from the obligation to finish the work within the time aforesaid, or from the damages to be paid in default thereof, unless claim is made in writing at the time of such alleged neglect, default or delay, and the architect shall certify that an allowance of additional time ought to be made, in which case the contractor shall be released from the payment of the stipulated damages for the additional time so certified, and no more.' This paragraph would bar the plaintiff from any

claim for extension of time by operation of extras, unless you shall find that this provision was also waived by the parties. Gentlemen, I have occasion to say much to you of waivers of contract provisions. I would not have you thereby infer that waivers are to be lightly inferred or contracts lightly disregarded. Contracts are evidences of obligations assumed and are supposed to be entered into with deliberation. They are not to be brushed aside at convenience or without cause. Of course parties who are competent to contract, are competent to change their contracts and waive conditions in their favor, but changes and waivers must be found upon sufficient evidence. A waiver is a relinquishment of a known right. Such a relinquishment may arise as I have already described to you, but it is not to be presumed without sufficient evidence of an agreement to waive upon some manner of consideration or of acts or conduct indicative of an intention to waive, upon which the other party had a reasonable right to rely and did in fact rely."

The court charged substantially as requested, except that the jury were allowed to give effect to a waiver if they should find that there was one.

The seventh reason of appeal is " that the court erred in neglecting to charge the jury as requested by the defendant in reference to the money paid Maher in the spring of 1883, for completing the brick work ; and its charge on this point was erroneous."

The plaintiff sub-let the brick work to one Maher for the sum of $3,000 by written contract. This contract was left with the defendant with permission to pay Maher weekly on account of said sum of $3,000. This sum was exhausted by the close of the year 1882, and the brick work was not completed. In March following Fagan orally requested the plaintiff to complete the brick work, beginning on or before April 14th. He then called the architect's attention to the matter and informed him of his request to the plaintiff. The architect thereupon verbally directed him, if work was not begun by that date, to put men on and complete the Maher contract. The architect also wrote the plaintiff to

resume the work by the day above named. Upon the day named, work not having been resumed, Fagan telegraphed Maher to come and complete the work. Maher did so, and Fagan then paid him, in addition to the sum of $3,000, the sum of $2,740, for the work so done. It was not claimed that the plaintiff authorized such payment in excess of $3,000 ; and the plaintiff offered evidence to prove that he never knew, until long after, that such payment was made, or that Maher was doing the work otherwise than in fulfilment of his contract with the plaintiff ; that he had in March served a formal notice upon Maher that he forthwith complete his contract, and that he supposed ·the work was being done by Maher in pursuance of this demand. There was no evidence of any notice or intimation to the plaintiff of any purpose on the part of the defendant to avail itself of the rights contained in paragraph thirteen of the contract or of any other action of the parties, or of any other act or certification of the architect than that above stated.

The defendant's counsel requested the court to instruct the jury that, if they found the aforesaid facts claimed to have been proved by the defendant to be proved, the defendant would have the right to deduct the sum of $2,740 from. any amount which might be found due the plaintiff. The court did not so charge, but that " the contract is clear in pointing out a way by which the defendant might become entitled to complete neglected or delayed work. If you should find that that mode was followed in the Maher matter, I instruct you that the defendant might properly charge the expense incurred to O'Keefe's account. But it is necessary that the conditions or terms of the contract be strictly followed to entitle such charge to be made. One of these conditions is a certification by the architect of the refusal, neglect or failure of the contractor. The defendant relies upon the fact, as claimed, that the architect, upon complaint of Father Fagan, representing the defendant, and upon information from him that he had notified O'Keefe to proceed with the work by a day specified, had directed him (Father Fagan) that if he (O'Keefe) did not commence work by that day, to put

men on and complete the work. This direction, together with proof of a notice from Father Fagan to O'Keefe as stated, and of a notice from the architect to O'Keefe to begin work by the day named, are claimed as satisfying the provisions of the contract. I charge you, gentlemen, that such facts would not constitute such a compliance with the contract; would not constitute such a certification by the architect as to entitle the work to be completed by the defendant upon the plaintiff's account."

We think that the defendant was not entitled to the instruction requested, and that the instruction given, holding the defendant to a strict compliance with the terms of the contract, was proper.

In their brief the counsel for the defendant say:—"In any view of the case the defendant paid Maher $2,740 for laying brick which the plaintiff was bound by the written contract to lay. * * * If one has paid money for the benefit of another, which the latter was legally bound to pay, and has done so for a reasonable cause and not officiously, he can recover the amount of the party for whose benefit it was paid." It may be questionable whether the principle here invoked applies. As between the parties the duty of laying the brick devolved upon the plaintiff; as between the plaintiff and Maher, it devolved upon Maher. Both parties directed him to do the work. The plaintiff supposed that he was doing it in fulfilment of his contract with him; Fagan supposed that he was doing it by his direction and paid him accordingly. There seems to have been a mutual misunderstanding. Under these circumstances it is doubtful whether any liability attaches to the plaintiff. Be this as it may, the point was not made in the court below, and we have no occasion to consider it.

There is error in the judgment appealed from and a new trial is granted.

In this opinion the other judges concurred.