## August Benson vs. Conrad W. Miller.

Argued Jan. 9, 1894.    Affirmed Feb. 1, 1894.

No. 8493.

**Building contract, powers vested in two architects as arbiters.**

In a building contract, it was stipulated that, in case of the failure or unreasonable delay of the contractor to provide the necessary labor and materials to complete the work by a certain time, in the judgment of two architects named, then the other party to the contract might, after three days' notice, provide other labor and materials, and complete the work. *Held,* that the contractor could not be lawfully stopped from proceeding with his work in constructing said buildings, upon the judgment of said architects, where the judgment of one was based solely upon what the other had informed him, and not upon his own examination of the premises and a proper inquiry into the facts constituting such default on the part of the contractor. He was entitled to the benefit of the joint judgment of the architects, based upon a full knowledge by each one of the facts which constituted such default, especially where the examination of the condition of affairs called for a personal examination of them, as a condition precedent for the exercise of the discretion and judgment of each architect.

Appeal by defendant, Conrad W. Miller, from a judgment of the District Court of Ramsey County, *Charles E. Otis,* J., entered August 29, 1893, against him on the verdict of a jury for $2,848.61.

*Warner, Richardson & Lawrence,* for appellant.

*C. D. & Thos. D. O'Brien,* for respondent.

Buck, J.    In November, 1888, the plaintiff entered into two contracts with the defendant, whereby it was agreed that plaintiff should erect two buildings for defendant, for the respective prices named in the contracts, and complete them by May 1, 1889.    On February 20, 1889, while the buildings were in the course of construction, the defendant ousted the plaintiff from the possession of the buildings, and refused to permit him to go on and complete the same under the contract.    Afterwards this action was commenced by plaintiff to recover the value of the labor performed and materials furnished by him under the contracts, and the profits which he would have realized from the contracts if he had been permitted

to complete them. The defendant interposed an answer, alleging that the plaintiff had not advanced the work as rapidly as required, and that the architects named in the contract had decided that the plaintiff had failed to furnish labor and materials as required by the contract, and that the defendant was therefore justified in ousting the plaintiff, and that he had completed the buildings at a cost largely in excess of the original contract price. Upon this state of the pleading, the parties went to trial, and each introduced considerable evidence to sustain his allegations.

After the defendant had rested, and the plaintiff had called one witness in rebuttal, the defendant asked permission to open his case, and called Mr. Thori, one of the architects, as a witness; whereupon the plaintiff asked permission to amend his reply, and to deny therein that the architects ever came to any judgment, and that any pretended judgment or pretended decision that the architects ever arrived at with reference to the inability upon the part of the plaintiff to perform his contract within the time provided in the contract, or his failure or unreasonable delay in the furnishing of materials, providing labor, and carrying on and executing the contract, was secured and brought about through fraud and gross mistake, induced by the defendant, for the purpose of enabling him to deprive the plaintiff of the benefits of the contracts; that the architects were wholly incompetent, and unable to determine any such question; and that if they did make any such pretended decision, or claimed to arrive at any such pretended judgment, it was solely by reason of their incompetency, gross mistake of fact, and the fraudulent inducements held out to them by the defendant, and through fraudulent collusion with him. The defendant consented that this amendment might be made, and the case was opened, and the defendant called the witness Thori, who testified in behalf of the defendant, and the trial proceeded at considerable length upon the issues tendered by the amended pleadings.

While there may have been some improper rulings of the court, and improper admissions of evidence before the amendment of the pleadings, yet we are of the opinion that the errors, if any, were of such a character that they were cured or waived by the parties proceeding with the trial of the case after defendant had been granted permission to open it, and by the character of the evidence there-

after given, and which was pertinent to the pleadings as amended.

The part of the contract upon which the principal controversy arose is as follows: "It is further agreed that in case of the failure or unreasonable delay of the said party of the second part to provide the necessary labor and materials, in the judgment of the said architects, requisite to complete the work by the time hereinafter set forth, the said party of the first part may, after three days' notice given in writing, provide other labor and materials, and prosecute the work to its proper completion, and deduct the cost of such labor and materials from the consideration of this agreement."

The amended pleadings opened the case, so as to litigate the conduct of the architects as to whether their judgment was of such a character that it was within the terms of the power conferred upon them by the contracts, and could be upheld in law and the proven facts.

Omeyer and Thori were the names of the architects mentioned in the contracts. Their conduct in the matter was attacked by the plaintiff, upon the grounds alleged in his amended reply. Without going into an extended discussion of the evidence, we may appropriately refer to some of the most salient points.

The defendant's witness Thori testified that the other architect, Omeyer, did not see the building, so that Omeyer made up his judgment in the matter from what Thori said to him about the way the work was progressing; that he (Thori) construed the contract between the parties as one which required plaintiff to work on the contract every day, and that it was the duty of the plaintiff to complete these buildings as soon as possible, whether before the 1st day of May or after, and that he had the absolute right to insist upon the plaintiff's working every day if the weather permitted.

Omeyer's office was in St. Paul, where the case was tried, and he was there during the progress of the trial, but, for some unexplained reason, he was not called as a witness. His judgment, therefore, rested upon what Thori had told him of the condition of the work on the buildings, and the amount of material furnished by the plaintiff. These facts were only known personally to Thori, and not to Omeyer. But the plaintiff was entitled to the judgment of both architects, upon each one ascertaining the facts in the case as to the default of the plaintiff. Omeyer did not examine the building,

as to the progress of the work being done by Benson, at or near the time of the alleged default, nor did he ascertain what measures Benson had taken to go on with the work, in procuring materials and supplies, and employing workmen for that purpose. Omeyer's judgment was simply that of Thori, and nothing more. This is shown by defendant's own evidence. When a contractor has valuable property rights and pecuniary interests depending upon the discretion, judgment, and good faith of two individual architects, he has the legal right that each shall ascertain the facts in the case, and examine the premises personally, where an examination is necessary, as in this case, and not rely wholly upon the judgment of the other architect. If this had been done, Omeyer might have arrived at an entirely different conclusion from that of Thori. The entire evidence in the case would certainly have justified him in differing from the judgment of Thori. If the judgment of one architect can be formed simply from the judgment of the other one, then there is no use in having the judgment of two architects. It was not in accordance with terms of the contract, and evidently not within the contemplation of the parties when they executed it. We find no evidence that Omeyer construed the legal obligation of the contract as Thori did, viz. that Benson must work every day, weather permitting, and finish the buildings as soon as possible. There was nothing in the contract that justified any such construction, for the contract gave Benson from November 20, 1888, to May 1, 1889, in which to complete the buildings. Only a little more than half the time had expired when Benson was stopped in his work. The evidence tended strongly to show that plaintiff could easily have completed the buildings by the 1st day of May, 1889, and he testified that he was ready, willing, and able to go on with the work, and complete the buildings by the time agreed upon in the contract. It appears that the weather was extremely cold, and that plaintiff was sick for a few days at the time of the alleged default. Even the defendant did not commence work in completing the buildings until about the 15th day of March, 1889, and they were finished before or at least by May 1, 1889.

Upon all these facts, the case was one for the jury to determine, and especially upon the question of fraud and the other issues raised by the amended pleadings.

The appellant's second assignment of error is that he offered to show by the defendant that from ten days to two weeks prior to the 12th of February, 1889, he went with Thori to see Mr. Benson, and saw him, and that Thori stated to Benson then, in Mr. Miller's presence, that unless Mr. Benson went on with the work, provided more material and men, in order to have the work go faster, they should be obliged to act under the contract, and take possession then, and finish the job under the contract.   This offer was made after the pleadings were amended, but, upon objection of plaintiff, it was refused by the court, and defendant was not permitted to show these facts.   This was clearly error on the part of the court; for, in view of the evidence already given, and as the pleadings then stood, it was competent testimony.   But, in view of the construction we place upon the evidence in regard to the conduct and duty of the architects Thori and Omeyer, the testimony of Miller, if admitted, could not have changed the result, and therefore the error of the court in excluding the testimony of Miller was error without prejudice.   The charge of the court was quite favorable to the defendant, and as we do not find any reversible error in the record, the judgment appealed from is affirmed.

(Opinion published 57 N. W. Rep. 943.)