Charles SHUEE and Eileen
Shuee, Appellants,

v.

Donald A. GEDERT and Kathryn L.
Gedert, Appellees.

No. 1–179A29.

Court of Appeals of Indiana,
First District.

Oct. 17, 1979.

We affirm.

We are duty-bound to affirm the judgment of the trial court if it is sustainable upon any legal theory (*Cressy v. Continental Corp.*, (1978) Ind.App., 378 N.E.2d 941; *Monarch Industrial Towel and Uniform Rental, Inc. v. Model Coverall Service, Inc.*, (1978) Ind.App., 381 N.E.2d 1098), and we are ever-mindful of our standard of review for an appeal from a judgment by the trial court:

It is fundamental that in reviewing actions of a trial court, an appellate court can neither weigh the evidence nor determine the credibility of the witnesses. *Soft Water Utilities, Inc. v. LeFevre,* (1974) [159] Ind.App. [529], 308 N.E.2d 395; *Nugent v. Smith,* (1972) 153 Ind. App. 484, 287 N.E.2d 899; *Englebrecht v. Tri-State Franchisers Inc.,* (1972) 153 Ind. App. 350, 287 N.E.2d 365. The considerations of the weight of the evidence and the credibility of the witnesses are left exclusively to the trier of the facts, in this case the trial judge, and they will not be disturbed on appeal if there is evidence in the record to sustain them. Neither the Court of Appeals nor the Indiana Supreme Court can reverse a trial court in its determination and finding of the facts and judgment thereon, unless the record discloses there were no facts nor inferences based therefrom to sustain its judgment.

*B & T Distributors, Inc. v. Riehle,* (1977) 266 Ind. 646, 649, 366 N.E.2d 178, 180. *See also Cox v. Cox,* (1973) 155 Ind.App. 336, 292 N.E.2d 817.

The Shuees brought an action for specific performance and, alternatively, damages for breach of contract. The trial court, however, found in favor of the Gederts on their counterclaim for the rescission of the contract(s) in dispute. The pivotal issue on appeal is whether there was sufficient evidence to support the action of the trial court in rescinding the contract(s).[1]

---

William G. Brown, Brazil, for appellants.

Thomas & Thomas, Brazil, for appellees.

ROBERTSON, Judge.

Plaintiffs-appellants Charles and Eileen Shuee appeal a judgment by the trial court in favor of defendants-appellees Donald and Kathryn Gedert.

---

1. In alleging error in the rescission of the contract, the Shuees contend (1. that trial court abused its discretion, and (2. the "verdict" was not supported by sufficient evidence. As both these issues concern the sufficiency of the evidence, they are treated together.

The evidence most favorable to the judgment reveals that the Gederts were successfully operating a mobile home business in Greencastle and had been acquainted with the Shuees for about ten years. In March, 1976, the parties began to negotiate the "sale" of Lake Brazilian Estates, a mobile home park owned by the Shuees. Without the benefit of counsel, the parties entered into a "Proposition" on March 25, 1976, and a supplemental agreement on April 1, 1976. Together, these documents were designed to effectuate the financing and sale of a $200,000 mobile home business. The basic premise that can be gleaned from the writings was that the Gederts would assume the Shuees' liabilities to the mortgagee bank, and make a $10,000 down payment to the Shuees. It was contemplated that title to the realty would eventually be transferred to the Gederts, but since the most favorable rental season was about to begin, the Gederts were given immediate possession.

■ Prior to the execution of the instruments in issue, several representations were made to the Gederts.[2] For example, Gedert was told that all utilities were properly installed and ready for use. In fact, however, several lots had not been connected to the sewer mains. Additionally, some telephone and television cables were not properly installed underground, contrary to previous assertions. After inquiries, Gedert discovered that most if not all of the cost for the proper completion and installation of the utilities would have to be borne by him. Gedert was also told that the taxes on the realty would be $450 per year, instead of the actual amount of approximately $3,000 per year.[3] Lastly, there was a serious question raised concerning representations about the amount of income generated by the business prior to the sale.

■■ Gedert testified that these representations were material to the bargain and that he relied on the same in executing the documents. The subject matter of the various representations was apparently broached with Shuee from time to time, but no accord was struck. When Gedert and the bank were unable to reach an agreement on financing,[4] Gedert left the premises on or about December 7, 1976.[5] Soon thereafter, the present action was commenced.

■ We believe Gedert successfully established his right to rescind on the grounds of fraud, as the same was articulated by Judge Buchanan in *Grissom v. Moran*, (1972) 154 Ind.App. 419, 290 N.E.2d 119, *reh. denied*, 292 N.E.2d 627. In a like sce-

Also, the Shuees quote extensively in their brief remarks by the trial court *not contained in the record*. Such matters are not properly before us.

2. These representations were made either by Shuee or Gendler, the latter as agent for Shuee (an issue not in dispute).

3. Shuee contends that Gedert could not "rely" on representations concerning matters of public record. A false statement made for a fraudulent purpose, however, can be justifiably relied upon even though the fact misrepresented is of public record. *See Backer v. Pyne et al.*, (1891) 130 Ind. 288, 30 N.E. 21.

4. Gedert testified that when he agreed to "assume" Shuees' liability to the bank, he was under the impression that the land would be the primary security for the debt. This impression comports with Indiana law. *See, e. g., Gregory, Administratrix, v. Arms*, (1911) 48 Ind.App. 562, 96 N.E. 196. The bank, however, demanded what appears to be the right to proceed directly against the Gederts without foreclosure on the realty. Primarily for this reason, financing was not completed.

5. Shuee's attorney sent a demand letter to Gedert on December 9, 1976. Accordingly, the trial court could have concluded that Shuee was aware of Gedert's intent not to perform any further under the contract at least by this time. (Later in December, Gedert also sent some checks for December rent to Shuee's bank, together with an explanatory memorandum.) Of course, an intent to disaffirm the contract must be seasonably made, by either formal notice or by some positive act, and these factors must be determined by the trial court upon the facts of each case. *Brown et al. v. Young*, (1915) 62 Ind.App. 364, 110 N.E. 562. The Shuees have not persuaded us that the evidence was insufficient on this score to mandate our reversal of the trial court.

nario, the *Moran* court held that (1. fraud may be established by circumstantial evidence, (2. a fraudulent purpose may be inferred from an unqualified assertion that a fact exists when such a statement is false and induces reliance, and (3. a person may rely on such representations where reasonable under all the circumstances. Viewing the evidence as recited above,[6] we are unable to conclude that the evidence was insufficient to support the rescission of the contract(s) in issue.[7] Since the Gederts were entitled to rescind due to fraudulent representations, the trial court correctly determined that the Gederts had not breached the contract(s) in issue. *Moran, supra.*

 We also believe the trial court properly awarded $7,209 to the Gederts. Once the right to rescission is established, the burden shifts to the opposing party to establish countervailing equities. When the plaintiff proves that he can return the property in specie or its reasonable value, then the trial court must consider the various equities in returning the parties to the status quo. Where, as here, the computation in returning the parties to the status quo is not embodied in special findings of fact, we must presume the trial court correctly balanced the equities in the absence of a demonstrable abuse of discretion. *Moran, supra.* In this case, the Gederts made a downpayment of $2500, six mortgage payments of about $2,210 each, expended funds for advertising, improvements, maintenance, office help, *et cetera.* The trial court awarded the Gederts substantially less than they claimed. Hence, Shuee has not persuaded us that this award was anything other than a return to the status quo

as fashioned by the equitable discretion of the trial court.

 At this juncture we deem it important to note that the foregoing represents an attempt by this court to deal with the rudimentary issues of this appeal in order to be assured, under appropriate standards of review, that substantial justice was done in the court below. We expressly decline the invitation to face each and every allegation of error in the appellant's brief. We remind counsel that an argumentative interpretation of the facts is properly presented to the trial court, but it will not suffice as a legal "argument" on appeal:

> We have said on occasions too numerous to require citation of authority that points raised by an appellant not "argued" in the argument section of his brief are deemed waived. By "argument" we mean a clear presentation of appellant's contentions with respect to the issues presented, the reasons in support of the contentions with any applicable citation to authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions relate to the particular facts of the case under review.

*Dortch et al. v. Lugar et al.,* (1971) 255 Ind. 545, 575–6, 266 N.E.2d 25, 44 (citation omitted). It is axiomatic that we will not search for reversible error (*In re Estate of Meyer,* (1966) 138 Ind.App. 649, 215 N.E.2d 556), and " . . . when it appears that substantial justice has been done and the case fairly tried on its merits, we are not inclined to brief the case and serve as a proponent for appellant." *Indianapolis Morris Plan Corporation v. Sparks,* (1961)

---

6. Our function as an appellate tribunal precludes us from substituting our judgment for that of the trial court. *In re Marriage of Patus,* (1978) Ind.App., 372 N.E.2d 493; *Trustees of Indiana University v. Williams,* (1969) 252 Ind. 624, 251 N.E.2d 439. Factual controversies must be resolved below because this court may not perform the function of the trial court. *See Melloh v. Gladis,* (1974) 261 Ind. 647, 309 N.E.2d 433; *U. S. Aircraft Financing, Inc. v. Jankovich,* (1977) Ind.App., 365 N.E.2d 783.

7. The Shuees' argue that rescission is improper since they did not breach the contract. This argument is specious. A contract is voidable upon establishing fraud, and the fraudfeasor is not automatically relieved of culpability simply by his performance of some of the contractual duties imposed upon him. Additionally it appears that the trial court could have found a breach in the failure of the Shuee's to present an abstract of title as per the Proposition.

132 Ind.App. 145, 152, 172 N.E.2d 899, 903. *See Ernst v. Sparacino,* (1978) Ind.App., 380 N.E.2d 1271. In short, the conclusory arguments presented by the appellant simply have not discharged the burden of Shuee to establish reversible error.[8]

Lastly, the Shuees contend that the trial court erred in denying their prayer for specific performance. In upholding the rescission of the contract(s), however, it would be superfluous to determine whether specific performance was appropriate. We need not consider issues which are rendered moot by virtue of our disposition of the appeal. *See Bob Layne Contractor, Inc. v. Buennagel,* (1973) 158 Ind.App. 43, 301 N.E.2d 671. Matters unnecessarily to a full and final determination of a cause should generally not be discussed by an appellate tribunal. *State ex rel. Clemens v. Kern et al.,* (1939) 215 Ind. 515, 20 N.E.2d 514; *Remster et al., Election Commissioners v. Sullivan et al.,* (1905) 36 Ind.App. 385, 75 N.E. 860.

Accordingly, the trial court is affirmed.

Affirmed.

BUCHANAN, C. J., and LOWDERMILK, P. J., concur.

---

**8.** On the issue of rescission, we are graced with but two cited cases. Shuee cites *White v. Mitchell et al.,* (1902) 30 Ind.App. 342, 65 N.E. 1061, for the proposition that a rescinding party must promptly communicate his intention to rescind. *White,* however, has absolutely nothing to do with rescission for fraud or, for that matter, the necessity for prompt communication. *Gwynne v. Ramsey,* (1883) 92 Ind. 414, is the second case relied upon by Shuee. In *Gwynne,* the court held that the person in possession of realty for four years could not rescind *since the parties therein* could not be returned to status quo. Clearly, the facts herein are more closely aligned with those in *Moran,* and easily distinguishable from those presented in *Gwynne.*